UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL HARDY,<br><br>Plaintiff,<br><br>v.<br><br>BHUPINDER SINGH, et al.,<br><br>Defendants. | Case No. 3:23-cv-00207-ART-CSD<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT<br>(ECF Nos. 95/96, 98) |
| SCOTT THAYER and CINDY THAYER, natural parents and wrongful death heirs of the deceased, COLE THAYER,<br><br>Plaintiffs,<br><br>v.<br><br>BHUPINDER SINGH, et al.,<br><br>Defendants. | |

On July 22, 2022, a tractor-trailer that was going too fast collided with a Ford F-150 on U.S. Route 50 in Lander County, Nevada. Plaintiffs Scott and Cindy Thayer sue as parents and heirs of their deceased son, Cole Thayer, and Plaintiff Daniel Hardy sues to recover for his own injuries. (ECF No. 37.) Defendants Lucky Transport LLC ("Lucky") and AONE Brokerage Company LLC ("AONE") move for summary judgment. (ECF Nos. 95/96, 98.) Lucky also moves for summary judgment against AONE's crossclaims against it. (ECF No. 95/96.) The Court now denies all motions for summary judgment.

## I. BACKGROUND

The relevant undisputed facts are as follows. On July 22, 2022, Defendant Bhupinder Singh, the owner and operator of Defendant GRK Transport LLC ("GRK"), was driving a tractor-trailer carrying a load of hay westbound on U.S. Route 50 in Lander County, Nevada, around mile marker 27. At this time, Cole Thayer was driving a Ford F-150 in the opposite direction, with Daniel Hardy as the sole passenger. (ECF No. 95-4.) As the two trucks approached a curve in the road, Bhupinder Singh, who was driving too fast, braked, skidded, and crossed the double-yellow line into oncoming traffic. The tractor-trailer struck the left front of the pickup truck.

Cole Thayer passed away at the scene. Daniel Hardy was injured. Bhupinder Singh later pled guilty to vehicular manslaughter, failure to drive on the right half of the highway, and failure to decrease speed and use due care. (ECF No. 98-4 at 183-89.)

Daniel Hardy and Cole Thayer's parents have sued Bhupinder Singh, GRK, Lucky, and AONE for negligence and wrongful death. (ECF No. 37.) AONE has brought cross-claims against all the other defendants for indemnity, contribution, and apportionment, with an additional claim of contractual indemnity against Lucky only. (ECF No. 47.) Defendants Bhupinder Singh and GRK have not moved for summary judgment, but Defendants Lucky and AONE have.

Although an independent contractor for Lucky at the time of the accident, Bhupinder Singh was formerly a Lucky employee. (ECF No. 95-2 at 32-33.) When asked how Bhupinder Singh's forming GRK changed their business relationship, Lakhwinder Singh responded on behalf of Lucky that the pay structure was different, but otherwise there was "[n]o difference." (ECF No. 102-4 at 17.) GRK got assignments from Lucky only, although Bhupinder Singh had

discretion to accept or deny them. (ECF No. 95-2 at 32-33.) Bhupinder Singh chose his own route for travel; and owned, insured, licensed, and maintained his own truck. ECF No. 94-2.) Bhupinder Singh rented a trailer from Lucky, and used Lucky's credit card for fuel, with fuel costs to be deducted from pay. (*Id.* at 14.) AONE, as Lucky's broker, required Bhupinder Singh to share his location via GPS, to answer calls from AONE, to record any issues regarding loading on the bill of lading, and to refrain from breaking the seal on the cargo. (ECF No. 102-4 at 20-21.)

Prior to entering a contract with Lucky to move the load of hay at issue, AONE knew that Lucky had subcontracted their loads in the past. (ECF No. 105-1 at 5.) They knew that Lucky had breached a brokerage agreement that obligated it to move all loads itself, rather than subcontracting them. (ECF No. 102-2 at 9.) Nevertheless, AONE had no knowledge that Lucky had subcontracted the load. All they knew of Bhupinder Singh and GRK was that the load was being driven by a Lucky driver nicknamed "Hudda." (ECF No. 112-1.)

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication of "claim[s] or defense[s]" when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting or disputing a fact "must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable factfinder could rely to find for the nonmoving party. *Id.*

In determining summary judgment, courts apply a burden-shifting analysis. A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmovant bears the burden at trial, as is the case here, the movant can meet its burden by either (1) presenting evidence to negate an essential element of the nonparty's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the non-movant will bear the burden of proof at trial. *See id.* at 323-24. After the movant has met its burden, the burden shifts to the nonmovant to come forward with specific facts showing a genuine issue of material fact remains for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although "[o]n summary judgment the inferences to be drawn from the underlying facts...must be viewed in the light most favorable to the party opposing the motion," *id.*, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87 (internal citations omitted). The non-moving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)).

## III. LUCKY'S MOTION FOR SUMMARY JUDGMENT IS DENIED. (ECF NO. 95/96.)

Lucky argues that it cannot be held directly or vicariously liable in negligence for the actions of Bhupinder Singh, an independent contractor. Since

there is a dispute of material fact as to whether Lucky had control over Bhupinder Singh's work, summary judgment is denied.

"Generally, whether an employee was acting within the scope of his or her employment for the purposes of respondeat superior liability is a question to be determined by the trier of fact." *Evans v. Sw. Gas Corp.*, 842 P.2d 719, 721 (Nev. 1992) (reversing a district court's grant of summary judgment in favor of an employer), *overruled on other grounds by GES, Inc. v. Corbitt,* 21 P.3d 11 (Nev. 2001). An employer may be held vicariously liable for the actions of an employee taken while they are under the control of the employer and acting within the scope of employment. *Id.* Employers are generally not vicariously responsible for the acts of independent contractors absent special circumstances, such as where the "'employee' is under the control of the 'employer.'" *National Convenience Stores v. Fantauzzi*, 584 P.2d 689, 691 (Nev. 1978); *see San Juan v. PSC Indus. Outsourcing*, 240 P.3d 1026, 1031 (Nev. 2010); *Thomas v. Riverside Resort & Casino*, 885 P.2d 575, 575 (Nev. 1994). "This element of control requires that the employer 'have control and direction not only of the employment to which the contract relates but also of all of its details and the method of performing the work....'" *Kennel v. Carson City School District*, 738 F.Supp. 376, 378 (D.Nev.1990) (quoting 53 Am.Jur.2d Master and Servant § 2 (1970)).

Lakhwinder Singh, the owner of Lucky, testified at a deposition that after Bhupinder Singh left his official employment to form GRK, the real terms and conditions of their professional relationship practically did not change. (ECF No. 102-4 at 17.) The main term that changed was payment. (*Id.*) But even as an independent contractor, Bhupinder Singh was still paid by Lucky, which took the payment for the job and then gave him a cut. (ECF No. 95-2 at 6) *See Kennel*, 738 F. Supp. at 378. Bhupinder Singh called Lucky to receive assignments. Lucky gave him the pickup point for the goods to be transported

and the destination, and provided dispatching services en route. (ECF No. 95-2 at 6.) Pursuant to its contract with AONE, Lucky required Bhupinder Singh to be tracked by GPS, make himself available between certain hours so that AONE could check on his location, to record any issues regarding loading on the bill of lading, and to refrain from breaking the seal on the cargo. (ECF No. 102-4 at 20-21.)

Viewing the record in the light most favorable to the plaintiffs, a factfinder could decide that Lucky had control and direction of Bhupinder Singh's work, its details, and its method of performance. Although Lucky has brought evidence tending to show Bhupinder Singh's independence from them, at minimum, there is a dispute of material fact as to whether Bhupinder Singh was under Lucky's control. Since Lucky has not disputed whether Bhupinder Singh was negligent, a real dispute as to the employer-employee relationship suffices to deny summary judgment on negligence. Since the purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses," the rest of Lucky's defenses to the remainder of plaintiffs' theories of negligence need not be addressed at this early stage.[1] *Celotex Corp*,, 477 U.S. at 323–24.

## IV. AONE'S MOTION FOR SUMMARY JUDGMENT IS DENIED. (ECF NO. 98.)

AONE argues that it cannot be liable for negligence because it had no relationship with Bhupinder Singh or GRK, and because it conducted due

[1] Several citations and quotations in Lucky's motion for summary judgment were unverifiable. The Court takes notice of Ninth Circuit law holding that filing fabricated authorities and misrepresenting real ones may amount to a failure to file points and authorities in support of a claim, or a cause for discipline. *See Malkeet Lnu v. Blanche*, 177 F.4th 1014, 1027 (9th Cir. 2026). At this stage, the Court draws no conclusion as to the origin of these errors and takes no action.

diligence before contracting with Lucky. Plaintiffs dispute only whether AONE negligently hired Lucky.

"The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position." *Burnett v. C.B.A. Security Service*, 820 P.2d 750, 752 (Nev. 1991). An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities. *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996) (citing *Kelley v. Baker Protective Services, Inc.*, 401 S.E.2d 585, 586 (Ga. 1991)). The parties agree that freight brokers have a duty to contract with safe motor carriers, and that if they breach that duty, they may be held liable through the tort of negligent hiring. *See San Juan*, 240 P.3d at 1031.

AONE and Plaintiffs dispute the scope of the duty to retain a safe carrier; whether AONE breached that duty; and whether the breach, if any, was a legal cause of Cole Thayer's death and Daniel Hardy's injuries. Plaintiffs argue that AONE breached the standard of care because "Lucky, as a matter of 'normal' practice, subbed loads out to GRK despite having no broker authority and AONE knew it," and that AONE's doing business with Lucky led to Plaintiffs' injuries.

There is evidence to show that AONE breached their duty of care when they continued to do business with Lucky even though they knew that Lucky was subcontracting their loads. Amandeep Singh, owner of AONE, testified that Lakhwinder Singh told him that on some occasions Lucky used third-party carriers to transport loads. (ECF No. 105-1 at 5). Lucky was not a registered broker and had no broker authority. (ECF No. 102-1). Under the MAP-21 statute, which has the purpose of ensuring highway safety, anyone without a brokerage license, such as Lucky, is prohibited from acting as a broker. 49 U.S.C. § 14916. Plaintiffs' expert Mr. Lewis said that "[t]his load should not

have been in transit as slated… the truck and trailer should not have been on the road at the time and place of this crash," and he attributed responsibility to AONE as well as Lucky. (ECF No. 105-3 at 13.) Mr. Lewis was not specific as to what he thought the standard of care should be, or whether AONE had breached it by contracting a carrier that subcontracted loads without a broker's license. Nevertheless, at summary judgment, the evidence in the record is construed in the light most favorable to the non-moving party. Viewed in this light, Mr. Lewis's disapproval of double-brokering and his belief that AONE cooperated with Lucky's illegal conduct tends to show that AONE's actions breached the industry standard of care. A factfinder could also find support for breach in the report of AONE's expert Ms. Reinhart, who conceded that "it is common practice in the industry to have an employee driver acquire their own operating authority if they become hard to insure based on their driving record." (ECF No. 98-4 at 164.)

If AONE breached its duty to contract with a safe carrier, there is evidence to show that the breach could be the legal cause of the Plaintiffs' injuries. Lucky found the job through AONE, and if not for AONE it is likely that no Lucky-associated driver would have been driving at the time and place of the crash. AONE argues that the intervening bad acts of Lucky and Bhupinder Singh cut off the chain of causation as a matter of law. "[A] third party's criminal act is a superseding cause unless it involves a foreseeable hazard to a member of a foreseeable class of victims." *Wood v. Safeway, Inc.*, 121 P.3d 1026, 1037 (2005); *see El Dorado Hotel, Inc. v. Brown*, 691 P.2d 436, 441 (Nev. 1984), *overruled on other grounds by Vinci v. Las Vegas Sands, Inc.*, 984 P.2d 750 (Nev. 1999). The question of foreseeability is generally for the factfinder to decide. *El Dorado Hotel, Inc.,* 691 P.2d at 441. As concluded above, AONE contracting with Lucky could have been unreasonable because illegal double-brokering can put more high-risk drivers on the road. (ECF No. 98-4 at 164.)

On the same evidence, a factfinder could decide that it was foreseeable that the subcontracted driver would drive dangerously and injure or kill others on the highway.

The claim against AONE survives if they have credible evidence of negligence under any theory, so it is not necessary to reach the other issues. Summary judgment cannot be granted.

## V. LUCKY'S CROSS-MOTION FOR SUMMARY JUDGMENT IS DENIED. (ECF NO. 95/96.)

Lucky has moved for summary judgment on AONE's crossclaims for indemnity, contribution, apportionment, and contractual indemnity. Lucky says that "[f]or all the same reasons that Lucky Transport is not liable for Bhupinder and GRK's negligence, AONE is also not negligent, and therefore, there is no judgment from which Lucky Transport would need to indemnify AONE." (ECF No. 95/96.) AONE argues that it can continue to pursue legal fees against Lucky regardless of the decision on the other motions for summary judgment. (ECF No. 103.)

Lucky's motion for summary judgment against AONE's crossclaims is premised on AONE winning summary judgment. Since AONE has not been granted summary judgment, Lucky's motion against the crossclaims is denied.

## VI. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Lucky and AONE's motions for summary judgment and cross-summary judgment are DENIED. (ECF Nos. 95/96, 98).

DATED: August 11, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE